UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES JONATHAN HIESTER, # 626455, )
                                  )
            Petitioner,           )    Case No. 1:10-cv-860
                                  )
v.                                )    Honorable Paul L. Maloney
                                  )
CINDI CURTIN,                     )    **REPORT AND RECOMMENDATION**
                                  )
            Respondent.           )
_____)

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner seeks federal habeas corpus relief from his plea-based convictions and sentence. On October 30, 2006, petitioner, represented by Attorney Holly A. Baker, appeared before Judge William C. Marietti in Muskegon County Circuit Court and entered his guilty plea to the charges of conspiracy to deliver more than 1000 grams of cocaine and possession with intent to deliver 50 grams or more but less than 450 grams of a mixture containing the controlled substance cocaine. On May 20, 2008, Judge Marietti sentenced petitioner 14 to 30 years' imprisonment on the conspiracy conviction and a concurrent term of 5 years and 6 months to 20 years' imprisonment on his conviction for possession with intent to deliver cocaine.[1]

---

[1] On the same date, Judge Marietti sentenced petitioner to a consecutive sentence on his conviction for absconding while on bond. The conviction and sentence for absconding are not challenged in this petition.

Petitioner asks this court to overturn his convictions and sentence on the following grounds:

I. Petitioner's guilty plea was not made voluntarily with an understanding of the consequences.

II. Petitioner was denied effective assistance of counsel because his attorney did not interview the narcotics agents that petitioner worked with.

III. Michigan's appellate courts committed error in denying petitioner's applications for leave to appeal.

(Petition, at ¶ 12, docket # 1, Page ID 4). Respondent filed an answer to the petition. (docket # 22). Chief District Judge Paul L. Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief. I recommend that the petition be denied.

**Standard of Review**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 559 U.S. 766, 773 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court

adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ((""[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015); *Lopez v. Smith*, 135 S. Ct. 1 (2014); *White v. Woodall*, 134 S. Ct. 1627 (2014).

In its recent decision in *Woods v. Donald*, the Supreme Court once again emphasized that, "'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as

opposed to the dicta, of this Court's decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. 135 S. Ct. at 1376 (internal citations and quotation marks omitted).

## **Proposed Findings of Fact**

### A.    Circuit Court Proceedings

The criminal charges against petitioner consisted of two counts. Count I was a charge that on or about June 27, 2006, in the area of Henry and Laketon, which is in the County of Muskegon, State of Michigan, petitioner did unlawfully conspire, combine and confederate , and agree, together with Hugo Rodriguez and/or other unknown individuals to deliver over 1000 grams of cocaine, contrary to law. The conspiracy to deliver over a thousand grams of cocaine carried a penalty of life or any term of years and/or a $1,010,000.00 fine. Count II charged that petitioner possessed with intent to deliver 50 grams or more but less than 450 grams of a mixture containing the controlled substance cocaine, contrary to Michigan law. This crime carried a maximum penalty of 20 years and/or a $250,000.00 fine.

On October 30, 2006, petitioner appeared before Judge William C. Marietti and pleaded guilty to both crimes charged. The plea agreement was that petitioner would plead guilty as charged in the information. He had cooperated and was expected to continue cooperating in this matter, "including testifying against the remaining co-defendant in this case, Hugo Rodriguez." (Plea Transcript (PT) at 3, docket # 18). As long as petitioner continued to do that, the prosecution would

be standing before the court and fully and fairly informing the court of all the cooperation petitioner had provided through the course of the investigation. (PT, 3-4). Petitioner testified under oath that no promises had been made to him and that he was not being forced to plead guilty. He was pleading guilty of his own choice. The charges in the information were read to petitioner in open court and he expressed his understanding of the penalties he faced. Judge Marietti explained that if he accepted petitioner's plea, his only means of appealing his plea and sentence would be by application for leave to appeal, not by right. (PT, 4-6). Judge Marietti then questioned petitioner regarding whether his attorney had advised him of his rights, the elements of the charges, and possible defenses:

> [THE COURT]: Has Ms. Baker advised you of your rights, the elements of the charges, and any possible defenses?
>
> THE DEFENDANT: Yes, she has.
>
> THE COURT: Did you have an opportunity [to] read and understand this Advice of Rights form that you signed.
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Do you understand if you plead guilty that you give those rights up?
>
> THE DEFENDANT: Yes, I do.

(PT, 6-7). Petitioner then pleaded guilty to both charges (PT, 7). Judge Marietti went on to question petitioner as follows before accepting his guilty plea:

> THE COURT: All right. On June 27 of this year, did you enter into an agreement with Hugo Rodriguez and Tracy Fitch to deliver some cocaine to someone else?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did that take place in Muskegon County?
>
> THE DEFENDANT: Yes, it did.

>     THE COURT:   And was the quantity involved over a thousand grams?
>
>     THE DEFENDANT:  Yes, it was.
>
>     THE COURT:  And did you have some possession – some cocaine in your possession at that time?
>
>     THE DEFENDANT:  Yes, I did.
>
>     THE COURT:  And did you intend to deliver that?
>
>     THE DEFENDANT:  Yes, sir.
>
>     THE COURT:  And was the amount involved more than 50 grams?
>
>     THE DEFENDANT:  Yes, sir.

(PT, 7-8). Judge Marietti accepted petitioner's plea after finding that it was knowing, voluntary, and accurate. (PT, 8). Petitioner was scheduled to be sentenced on December 19, 2006. (PT 8-9).

Petitioner fled Michigan before he could be sentenced. A bench warrant was issued for his arrest. Petitioner never testified at Hugo Rodriguez's trial. Petitioner was eventually apprehended in Las Vegas, Nevada, and extradited back to Michigan. (Miscellaneous Hearing Transcript at 3, docket # 17).

Petitioner then filed a motion to withdraw his guilty plea through Attorney Jeffrey West. On March 7 and April 21, 2008, Judge Marietti conducted a lengthy hearing on petitioner's motion to withdraw his guilty plea. On the first day of the hearing Judge Marietti heard testimony from petitioner, his trial attorney Holly Baker, Detective Brian Harris and Detective Patrick Herremans. (Motion Hearing I (MH I), docket # 12).

Detective Patrick Herremans of the Muskegon County Sheriff's Department testified that in 2003, petitioner contacted the Western Michigan Enforcement Team (WEMET) and agreed to act as an informant. (MH I, 10, 11, 14, 17). Detective Herremans testified that such informants are

instructed "not to do anything illegal unless it's in strict[ly] under our strict control. We control when they're buying drugs." (MH I, 16-17). Further, petitioner signed a confidential informant card in 2003 which instructed him not to engage in any illegal activity. (MH I, 14, 22-24). The card is read to and signed by the informant. The individual is told that he or she will be criminally prosecuted for any illegal engaged in outside the control of WEMET. (MH I, 16-18, 36). In December 2003, when WEMET tried to make a controlled buy of crack cocaine through petitioner to determine whether he was reliable, petitioner came back with a substance that was not an illegal drug. (MH 21, 24-25). The last entry on petitioner's informant card was dated March 22, 2004. It indicated that petitioner could no longer provide information. (MH I, 25). Petitioner had never worked as an informant or under the direction of WEMET at any time after March 22, 2004. (MH I, 25).

Petitioner conceded that he signed the confidential informant card, but stated that he did not recall that it had been read to him. (MH I, 41). He agreed that the card stated: "[Y]ou shall not violate any criminal laws while gathering information or providing services to this department and you are advised that any violation will be prosecuted. You are not an agent of the Department of State Police. Any information you provide may be used in a criminal or civil proceeding." (MH I, 53). Petitioner testified that he did not read the card before he signed it. (MH I, 54).

Petitioner testified that he built up a relationship with a relatively big drug dealer named Hugo Rodriguez. (MH I, 43). Petitioner testified that he made two runs to Chicago for Hugo Rodriguez. On the first trip, petitioner traveled with Hugo Rodriguez and Tracy Fitch and they picked up a kilo of cocaine. (MH I, 44-45). Petitioner made a second trip with his girlfriend and they failed to obtain any drugs. (MH I, 45). Petitioner was arrested in 2006 after his third trip to Chicago for drugs had been planned. (MH I, 46). Petitioner indicated that he had testified at Hugo

-7-

Rodriguez's preliminary examination, and conceded that his testimony did not include anything indicating that he had been working for WEMET at the time of his arrest. (MH I, 47).

Petitioner claimed that he was surprised that he was being prosecuted. (MH I, 49-50). He testified that he had only pretended to work with Hugo Rodriguez to gain his trust. (MH I, 52). Petitioner had no contact with Detective Herremans or anyone else at WEMET since early 2004, more than a year and a half before his arrest. (MH I, 55, 58, 72). Petitioner had never been instructed by anyone at WEMET to get involved with Mr. Rodriguez or to take any trips to Chicago to purchase cocaine. (MH I, 72).

Petitioner testified that Attorney Baker had told him that it was not a defense that he was working for the WEMET (MH I, 50, 69, 71-72, 115-18). He claimed that Attorney Baker never explained to him that work for WEMET might be a defense to the possession of cocaine and the conspiracy charge. (MH I, 52). Petitioner conceded that he said nothing to Judge Marietti during the plea hearing about having been working for WEMET. (MH I, 51). Petitioner testified that he did not think he could be convicted. He thought that he would testify against Hugo Rodriguez and Tracy Fitch and be released from jail without serving any time in prison. (MH I, 63-65). Petitioner testified that he did not remember discussing the sentencing guidelines and the fact that he was facing considerable time in prison until after he had entered his guilty plea. (MH I, 66, 113-14). Petitioner testified that he never showed up for his scheduled sentencing, fled Michigan, and was eventually arrested in Las Vegas, Nevada. (MH I, 68). He denied that the only reason he was seeking to withdraw his guilty plea was his knowledge that the prosecutor's office would no longer be making a favorable sentencing recommendation because he absconded and failed to cooperate in the prosecution of Hugo Rodriguez. Petitioner agreed to waive the attorney-client privilege

because he wanted Judge Marietti to consider his arguments that trial counsel had been constitutionally ineffective as grounds to set aside his guilty plea. (MH I, 82-83).

Attorney Holly Baker testified that she had been petitioner's attorney. Petitioner had been caught with a quantity of cocaine and he gave a statement to police before his arraignment. (MH I, 84, 104). Ms. Baker had discussed with the petitioner the potential defense that he had actually been working for WEMET and had never really conspired with Hugo Rodriguez and that his possession of cocaine was attributable to his work as an informant. When Ms. Baker investigated petitioner's claim that he should never have been charged and that WEMET had set up the whole situation, she found nothing to support petitioner's assertion that he had actually been working for WEMET. (MH I, 91-92, 102, 109). "WEMET had not authorized, nor had they known about Mr. Hiester's involvement in this until they began investigating and found out that Mr. Hiester was selling drugs." (MH I, 92). She informed petitioner that it would be his testimony that he was working for WEMET against the testimony of WEMET officers that he was not. (MH I, 92). She never refused to take this defense through trial. She simply gave petitioner a candid assessment that it was his testimony against the testimony or WEMET officers and that petitioner's version of events "was not the way WEMET worked." (MH I, 93, 103, 105, 108, 110).

Attorney Baker testified that she repeatedly explained to petitioner that he was facing time in prison and would not be released for time served in jail. (MH I, 86-88). Attorney Baker even enlisted help from another attorney to help convince petitioner that he likely faced a long prison sentence. Attorney William Singer worked in the same building as Ms. Baker. Singer had performed work for petitioner on civil matters. Attorney Baker discussed the sentencing guidelines with petitioner. If petitioner elected to plead guilty, the prosecution had indicated that it could live with a sentence of seven or eight years, significantly below the bottom of petitioner's guidelines

range. If petitioner chose to go forward with his trial, he could be sentenced anywhere from top to bottom of the guidelines range. (MH I, 92, 97-98; MH II 14, docket # 13). Petitioner's attorney had discussed with him on numerous occasions the potential prison sentence that he faced. She had those discussions with petitioner before he decided to enter his guilty plea. (MH I, 89, 93-94).

On the second day of the hearing Judge Marietti heard testimony from Attorney William Singer and the oral argument on petitioner's motion to withdraw his guilty plea. (Motion Hearing II (MH II), docket # 13). Attorney Singer testified that he never acted as petitioner's attorney in the criminal case. He considered himself a friend and he helped petitioner get some of his affairs in order in light of the likely prison sentence that he faced. (MH II, 4, 7, 10). Singer's conversations with Attorney Baker were to the effect that petitioner's optimism that he might not have to serve any time in prison was unfounded. (MH II, 9-10). If petitioner cooperated and took the plea deal he could end up with as little as seven years, but he faced a potential sentence of 20 years or more if he went to trial and was convicted. (MH II, 7, 9, 13).

Judge Marietti found that petitioner's attorney had discussed with him "the viability of th[e] defense, if you want to call it that, that he was working for the WEMET when all the activities with which he was charged and convicted of at this time took place." (MH II, 22). Petitioner was advised that it would be a jury question, but the jury was not likely to believe his version of events. Further, Judge Marietti found that Attorney Baker had reviewed with petitioner the elements of the offenses and his possible defenses. (MH II, 22-23). Judge Marietti found that petitioner's attorney had many discussions with him regarding the sentencing guidelines and the possible penalties that he faced before he entered his guilty plea. Petitioner's fervent desire to get credit for time served caused him to tune out the advice that he was going to end up spending years in prison. Judge Marietti found no factual or legal basis for allowing petitioner to withdraw his guilty plea. (MH II,

24-25). "Mr. Hiester was disappointed that it didn't work out the way he wanted it to but it's not for lack of him submitting an understanding, voluntary and accurate plea. It is simply a matter of him not achieving what he wanted to achieve. So the motion to withdraw the plea is denied." (MH II, 25).

During the next portion of the hearing, petitioner entered his guilty plea on the absconding charge. (MH II, 26-32). The attorneys advised Judge Marietti that there was an agreement that petitioner's sentence on the absconding charge would be consecutive to his sentences in the underlying cases and that petitioner should be sentenced at the bottom of the sentencing guideline range on the absconding charge. (MH II, 26-28). Petitioner then pleaded guilty to the charge in the information for absconding. (MH II, 29-31). Judge Marietti accepted petitioner's plea because it was understanding, voluntary, and accurate. (MH II, 32).

On May 20, 2008, Judge Marietti sentenced petitioner to concurrent prison terms of 14 to 30 years' imprisonment and 5 years and 6 months to 20 years on his convictions for conspiracy to deliver over 1000 grams of cocaine and possession with intent to deliver 50 grams or more but less than 450 grams of cocaine. Judge Marietti imposed a consecutive sentence on petitioner's absconding conviction. It is not challenged in this petition. (Sentencing Transcript (ST) at 13, docket # 16).

### B. Appellate Proceedings

On May 21, 2009, petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals. Petitioner was represented by Attorney Rolf Berg. Petitioner sought leave to appeal based on claims that his guilty pleas were not knowing and voluntary and that Attorney Baker had been ineffective. The arguments were presented to the Court of Appeals as follows:

> I. DID THE TRIAL COURT ERRONEOUSLY DENY DEFENDANT A MOTION TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING DESPITE EVIDENCE THAT HE WAS NOT FAIRLY INFORMED OF THE VALUE OF HIS PLEA AGREEMENT AND MISINFORMED BY COUNSEL OF THE ELEMENTS OF THE OFFENSE AND LEGAL MERITS OF HIS CLAIM OF INNOCENCE?
>
> > A. WAS DEFENDANT INFORMED OF THE LIMITED RECOMMENDATION OF LENIENCY OFFERED BY THE PROSECUTION IN CHAMBERS BUT NOT MENTIONED BY ANY OFFICER OF THE COURT ON THE RECORD?
> >
> > B. WAS DEFENDANT MISINFORMED BY COUNSEL OF THE ELEMENTS OF THE OFFENSE AND THE MERITS OF HIS CLAIM OF INNOCENCE?

(Statement of Questions Presented, Defendant-Appellant's Brief at iv, found in Michigan Court of Appeals Record, docket # 19). Petitioner also claimed that he was entitled to additional sentence credit for the time he was held in jail awaiting extradition. (*Id.*). On July 2, 2009, the Michigan Court of Appeals denied petitioner's application for leave to appeal "for lack of merit in the grounds presented." (7/2/09 Order, found in Michigan Court of Appeals record, docket # 19). One member of the three judge panel indicated that he would deny the delayed application for leave to appeal, but would remand the matter to the trial court for recalculation of petitioner's sentence credit for jail time served. (*Id.*).

Petitioner's application for leave to appeal to the Michigan Supreme Court raised the same issues rejected by the Court of Appeals. (Defendant-Appellant's Brief at iii-iv, Statement of Questions Presented, found in Michigan Supreme Court record, docket # 20). On March 29, 2010, the Michigan Supreme Court remanded the case to the trial court on the sentence credit issue, but denied the application in all other respects because it was not persuaded that the remaining issue presented should be reviewed by the court. (3/29/10 Order).

On August 17, 2010, petitioner filed his habeas corpus petition.

**Discussion**

## I. Knowing and Voluntary Guilty Plea

In Ground I, petitioner argues that his convictions should be overturned because his guilty plea was not made voluntarily with an understanding of the consequences. Petitioner argues that his plea was not knowing and voluntary because when he entered his guilty plea he thought that the charges against him would be dismissed because he had actually been working for WEMET and that Attorney Baker gave him bad advice that his work for WEMET was not a defense. (Petition at ¶ 12(A), docket # 1, Page ID 4; *see also* Brief at 2-3, Page ID 8-9).

The test for determining the validity of a guilty plea is " 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Judge Marietti found that petitioner's plea was knowing and voluntary. He found that petitioner had been informed that he faced years in prison. Further, his attorney had advised him that work for WEMET provided a potential defense to the conspiracy and possession with intent to deliver charges, but it was dependent on the jury believing petitioner's testimony regarding his version of events and rejecting the contrary testimony of police officers. Cooperation with authorities provided petitioner with an opportunity to significantly reduce the number of years he was likely to spend in prison. This benefit would not be available if petitioner went to trial and lost. Petitioner did not present clear and convincing evidence rebutting the presumption of correctness which attaches to Judge Marietti's factual findings. 28 U.S.C. § 2254(e)(1). The Michigan Court of Appeals agreed that petitioner's guilty plea was knowing and voluntary. It denied petitioner's application for leave to appeal "for lack of merit in the grounds presented." This was an adjudication on the merits of petitioner's claims. *See Harrington v. Richter*, 562 U.S. 86 (2011); *see also Werth v. Bell*, 692 F.3d

486 (6th Cir. 2012). The findings by Michigan's courts that petitioner's guilty plea was knowing and voluntary are well supported. I find that Ground I of the petition does not provide a basis for habeas corpus relief. Petitioner has not show that the rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

## II. Ineffective Assistance of Counsel

In Ground II, petitioner argues that Attorney Baker was constitutionally ineffective when she failed to "interview the WEMET narcotics agents the [petitioner] worked with." (Petition ¶ 12(C), Page ID 4; *see also* Brief at 1-2, Page ID 7-8). Judge Marietti rejected all petitioner's claims of ineffective assistance of counsel, including his claim that Attorney Baker had been constitutionally ineffective because her investigation of petitioner's potential defense that he had actually been working for WEMET was deficient. The Michigan Court of Appeals agreed[2] and denied petitioner's application for leave to appeal for lack of merit.

In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A court considering a claim of ineffective assistance must "indulge a strong presumption

---

[2] The argument that Attorney Baker's investigation was inadequate because she "did not talk to Herremans and Lukowski who had worked with [petitioner]" appears in section I(B) on page 6 of petitioner's brief in support of his delayed application for leave to appeal to the Michigan Court of Appeals.

-14-

that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, the court focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "[T]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because Michigan's courts decided petitioner's claims of ineffective assistance of counsel on the merits, their decisions must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-18 (2013); *Harrington v. Richter*, 562 U.S. at 98-101. To receive habeas relief, petitioner must demonstrate that the state courts' decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decisions applied *Strickland* incorrectly. Rather, petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1376;

*Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).  The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013).  The petitioner must show that the state courts' ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103).

I find that petitioner is not entitled to federal habeas corpus relief.  Additional investigation by Attorney Baker would have further reinforced the absence of evidence supporting petitioner's version of events.  (*See* MH I, 17, 22-25, 36).  The decisions of Michigan's court rejecting petitioner's claim of ineffective assistance of counsel easily withstand scrutiny under the "doubly deferential" standard of review.  *See Woods v. Donald*, 135 S. Ct. at 1376; 28 U.S.C. § 2254(d)(1).

### III.   Denial of Applications for Leave to Appeal

In Ground III, petitioner claims error in the "denial of leave to appeal."  (Petition ¶ 12(C), Page ID 4).  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  A federal court will not review a state court's decision on a matter of purely state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1990); *see also Hynes v. Birkett*, 526 F. App'x 515, 520-21 (6th Cir. 2013).  Ground III presents a state law issue.  It does not provide any basis for federal habeas corpus relief.

### Recommended Disposition

For the foregoing reasons, I recommend that the petition be denied.

Dated:   June 3, 2015

/s/  Phillip J. Green
United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).